The opinion of the court was delivered by
Duncan, J.
The statement sets out very fully the nature of the plaintiff’s cause of action. It was debt on bond with a penalty, conditioned for payment of the interest on the single sum, to Rebecca M‘Cabe, the widow of Edward M‘Cabe, during her life, and on her death, the principal sum to Samuel Lilly, the plaintiff below, the executor of the said Edward M‘ Ca.be. It then proceeds to state, that two years interest was due at the commencement, and claims judgment for the penalty.
The judgment was entered for the penalty so early as November, 1817. A fieri facias issued to August, 1818, for the penalty and costs, to be released on payment of two instalments and costs. The sheriff returned money made, and paid to plaintiff. To August, 1819, execution issued for two subsequent instalments, and to April, 1S21, for two succeeding ones. The defendant’s land had been sold on venditioni exponas, on these executions, the money raised and paid over to the plaintiff. This writ of error issued to the last term of the court, and after five years acquiescence in these proceedings, by the defendant below, plaintiff in error, we are not only called on to reverse this judgment, but the plaintiff in error asks to have the money paid back again to him by Samuel Lilly, who has paid it over to Mrs. M‘Cabe, the widow of E. M‘Cabe, whose sole subsistence it was. The objections are merely technical, having no relation to the merits, and from which no possible injury could arise to the plaintiff in error, and where if the judgment were reversed, he could not receive any ultimate benefit.
The special causés assigned are, on the argument, reduced to two, which will be best understood by considering them in the following order:
1. Did the plaintiff’s cause of action fall within the statement law?
2. Was the judgment entered two days earlier than was authorized by law, and therefore erroneous ?
And from this another question springs, did the act of 21st Feb- . Vuary, 1822, confirming all judgments that had been so erroneously entered in York county, apply t.o these proceedings ?
The object of the statement act of 25th March, 1806, was, to enable the people, in all plain money demands, arising from contracts *100 and obligations, for payment of money, to conduct their suits, without the agency of an attorney. The act prescribes a certain form both of writ and statement, which, if not substantially pursued, the court would be bound to reverse the judgment. But this course, which was intended to ease the people, would be the greatest curse that Could be inflicted on them, if after judgment, execution, sale, acquiescence for years, the dockets were ransacked, and little specks discovered, little insignificant loop holes, which never would catch the eye of a common countryman, who, the legislature intended, should do his own business in his own homely way, and after a practice of sixteen years, contemporaneous with the law itself, this notable discovery should be made, and all that had been thus solemnly done, should be swept away with one fell swoop. This would be a public calamity, the extent of which, no man can foresee, for the mischief would be incalculable. It will, therefore, well become this court, sitting as they do, for the purpose of redressing real grievances, occasioned by mistakes and errors, to exercise every legal acumen to protect the people from the effect of these pestilent efforts. I do not censure the gentlemen who appear in support of these writs of error. Far from it. They had the unquestioned right, when applied to, to prosecute these writs, and to support them, as their oaths required, to their best ability, and with all due fidelity to their clients. But I would censure the voluntary ferretting out these harmless mistakes, and encouraging men who were never injured by, and never complained of them, to litigate that which they had acquiesced in, and where the reversal of the judgment could answer no other purpose, but to vex their adversaries, delay the recovering of a just debt, which must finally, and assuredly as the day of the last judgment, overtake them, and with accumulated costs. But, however, and in whatever way they are brought before the court, if the proceedings are .erroneous, the court-must reverse them without regard to the consequences.
The words of the arbitration act are very comprehensive. “All suits which may be brought for any debt founded on a verbal promise, book account, penal or single bill.” Thus, obligations for payment of money áre directly provided for, not in general, but in express terms. There can be but one action brought on the same obligation; the duty is entire. On a single bill payable by instalments, no action can be brought, until the last day of payment. Not so in promissory notes, or contracts verbal or written, where the action is not debt, but assumpsit, and damages are recovered. ■'Andrews, 370. On a penal bill, or bond conditioned for payment of money at several days, it becomes absolute by not making any of the payments. 1 Wils. 80. But in entering up the judgment the court will take care to protect the party. Judgment is rendered for the penalty, where the condition is for the payment of money by instalments, or principal to become due at *101 a distant day with interest, payable annually, and the plaintiff takes out his execution, by leave of the court, as the instalments or interest become due, and this is the course both in England and this state. Sparks v. Garrigues, 1 Binn. 158. And that without assignment of breaches, or assessment of damages, by writ of inquiry. Boas v. Nagle, 3 Serg. & Rawle, 250. So far from supporting the position of the plaintiff in error, the case draws the distinction between a bond conditioned for performance of collateral matter, as there a bail bond, and a bond conditioned for payment of money. The first is not the subject of the statement act; the second is. If it were necessary to ask leave of the court to take out execution, I would presume it. If the plaintiff had not taken judgment for the penalty, he never could have recovered more than the interest due. By alleging payment of the subsequent instalments, the defendant wouid be let into a trial. This action was the subject of statement, and the statement in every respect certain, and quite consistent with the obligation, spreading oh the record the real nature of the obligation, and putting it out of the power of the plaintiff to misuse the judgment for the penalty. It was never in the view of the legislature to multiply suits or increase costs. Very different, indeed, was their intention. It never cotild be, that in such a case as this, more than one action could be supported, for then for this poor woman’s subsistence, if it had been made payable every week, she must have brought her action weekly.
The error in entering the judgment is cured by the confirming act; the constitutionality of this no man can doubt. It impaired no contract, disturbed no vested right, and if there ever was a case in which the legislature ought to stretch forth the strong arm to protect a whole community from an impending evil, caused by mere slips, this was the occasion. Confirming acts are not uncommon; are very useful — deeds acknowledged defectively by feme coverts, have been confirmed,and proceedings and judgments of commissioned justices of the peace, who were not commissioned agreeably to the constitution, or where their power ceased on the division of counties, until a new appointment. This law is free from all the odium to which retrospective laws are generally exposed. It cannot be assimilated to Bedford v. Shilling. Where a law is in its nature a contract, where absolute rights are vested under it, a law retrospecting, even if it were constitutional, would not be extended by any liberal construction, nor would it be construed by any general words, to embrace cases where actions are brought. It would be confined to future actions. Statutes are- prima facie prospective in their operation; and retrospective laws being in their nature odious, it ought never to be presumed the legislature intended to pass them, where the words will admit of any other meaning. But every confirming act is, in its very nature, retrospective. Retrospective laws, which only vary the remedies, devest no right, but merely cure a defect in proceedings otherwise fair, the omission of forma *102 lities which do not diminish existing obligations, contrary to their situation when entered into, and when prosecuted; for the one is consistent with every principle of natural justice, while the other is repugnant. Here there is no occasion to stretch the letter of the act; the retrospective intention as to all judgments is manifestly expressed. Indeed there is some reason to believe, that this batch of writs of error from York county, occasioned the passage of the act. The tocsin of alarm had been sounded, and the act passed to quiet the fears of those whose interests were affected, and in a universal practice for 16 years, few would have escaped from its consequences'. It cannot be said to defeat any right, to impair the obligation of any contract. The plaintiff in error could not be injured, whether the judgment was entered on the Monday or Wed-, nesday of the week. It did not deprive him of any opportunity of defence. If he filed a counter statement or plea, appeared and took defence any time in the week, the court would have received it. If the execution issued for instalments that he had paid, the court would have let him into a trial on the merits. But here he suffers execution after execution to issue for the instalments as they become due, complains not of any injury, but when the plaintiff has compelled payment by process of law, when his security is gone by the sale of the land, when he has paid over the money to the party who on the record was the hand to receive it, and for this defendant, after all this, to turn back to the origin of the judgment, and say, you ought not to have signed judgment for this just debt, (for just we must take it to be) until Wednesday, and therefore, five years after that step, when it did no injury; you must restore that money, is an application which, in my opinion, has as little grace to recommend it, as it has law to support it.
I could have wished some little time to have thrown my thoughts together in a more connected manner, but as no doubt is entertained, it is thought best for all parties now to give the judgment, least false hopes should be entertained, or groundless apprehensions excited.
Judgment and execution affirmed.