## M'Masters *against* The Commonwealth.

The act of assembly of the 7th of April 1832, authorizing the viewers of Market Alley in the city of Pittsburgh to apportion the damages occasioned to some of the lots by opening the same, upon other lots thereby benefited, and the second section of the act of the 6th of April 1833, making such damages a lien upon the lots benefited, and providing for their recovery by *scire facias* and execution, are constitutional.

ERROR to the common pleas of *Alleghany* county.

This was a *scire facias* brought in the name of the Commonwealth for the use of Nancy Knox and Samuel Davis against John M'Masters, owner of lot No. 393 in the city of Pittsburgh.

It is enacted by the act of the 7th of April 1832, that the court of common pleas of Alleghany county, on petition, should appoint fifteen or more freeholders to decide whether an alley, which it was intended to open, or which had been opened, from the Diamond to Fifth street, in the city of Pittsburgh, was necessary for public use. If necessary, the act directs that they shall proceed to lay out the same for public use, &c. and assess the damage done to any lot or lots (taking into consideration the advantages accruing, as well as the injury done), and shall apportion the damages separately upon the lots, or parts of lots benefited, according to a fair estimate of the benefit conferred on each lot, and designating the person to whom such damage is done and payable. Freeholders were appointed in pursuance of the act, who made report the 30th of July 1832, which was confirmed the 6th of July 1833. By the report, the viewers decided that the alley was necessary for public use; they also found for Nancy Knox 800 dollars, and for Samuel Davis 212 dollars 50 cents, as a compensation to the said Nancy Knox and Samuel Davis for lots and other property taken for the purpose of opening said alley, the whole amounting to the sum of 1012 dollars 50 cents. These damages, so assessed, the viewers apportion upon the owners of certain lots, designating them, benefited by the alley: and, among others, they assess the sum of 300 dollars on lot No. 393, owned by John M'Masters, the defendant in the *scire facias*. On the 6th of April 1833, which is since the report, but before the confirmation of the report of the viewers, the legislature directed, that the damages assessed and apportioned by the viewers appointed by the act of the 7th of April 1832, &c. shall, if approved by the court, &c. be a lien on the premises on which damages are assessed. The act further directs the manner of recovering the damages by *scire facias* in the name of the commonwealth. The plaintiffs have brought a *scire facias*, reciting the above facts, to which the defendant has demurred,

[M'Masters v. The Commonwealth.]

and assigns as cause of demurrer, that the acts of the 7th of April 1832 and the 6th of April 1833 are unconstitutional and void.

*Forward*, for plaintiff in error.

The act of the 7th of April 1832, *Pamph. Laws* 1831, 1832, *p.* 372, directs the proceeding, but imposes no lien nor injunction on the benefited party to pay.    This object was attempted to be accomplished by the act of the 6th of April 1833, *Pamph. Laws* 1832, 1833, *p.* 186.    These acts propose to take the property, or at least the money, of the plaintiff in error, and to compensate him in benefit.    This is a case which is clearly met by the constitutional prohibition.    The compensation must be in money.    Vanhorne's Lessee *v.* Dorrance, 2 *Dall.* 315 ; *Rawle's Const.* 130 ; Eakin et. al. *v.* Raub et al., 12 *Serg. & Rawle* 372 ; Dash *v.* Van Kleeck, 7 *Johns.* 499 ; 1 *Kent's Comm.* 455.

*Burke*, for defendants in error, cited, 2 *Kent's Comm.* 339 ; Livingston *v.* New York, 8 *Wend.* 85, 99, 101 ; Canal Bank of Albany *v.* Albany, 9 *Wend.* 249—256 ; Patchin *v.* Brooklyn, 2 *Ibid.* 377 ; Bonton *v.* Brooklyn, *Ibid.* 395 ; Stafford *v.* Albany, 7 *Johns.* 541 ; New York *v.* Dover street, 18 *Johns.* 506 ; Case of Spring Garden street, 4 *Rawle* 192.    In Pittsburgh two alleys and a street have been opened by the same proceedings.

The opinion of the Court was delivered by

ROGERS, J.—The only question about which there is any difficulty, is the constitutionality of the act of the 7th of April 1832. If the legislature had power to pass the first act, I can see no constitutional provision which forbids them giving effect to the report of viewers, by making the assessment a lien on the premises benefited, and prescribing a remedy for the collection of the assessed damages. This is an ordinary exercise of legislative power, and has been pursued in a great variety of instances, some of which have been reviewed in this court.    The act does not interfere with any vested right, as has been supposed, but merely prescribes a proceeding *in rem*, with a view of reaching the property benefited by the improvement.    It does not even give a remedy where none existed before, but facilitates the process by which the damages may be collected. It is an elementary principle, that there is no right without a remedy, and a writ might have been devised, without legislative aid, which would have afforded relief to the parties.    In Underwood *v.* Lilly, 10 *Serg. & Rawle* 97, it is decided that the entry of a judgment in York county on the first, instead of the third day of the term, in a proceeding under the statement law, is cured by the act of the 21st of February 1832, though a writ of error had issued before the passing of the act.    The omission to state in the certificate the acknowledgement of a release by husband and wife, that the wife was separately examined, is cured by the act of the 3d of April 1826, which act is

decided to be constitutional. Tate and wife *v.* Stoolzfoos et al., 16 *Serg. & Rawle* 35. And in Satterlee *v.* Mathewson, it is ruled that the act of assembly of the 8th of April 1826, respecting the relation of landlord and tenant between Connecticut settlers and Pennsylvania claimants, is constitutional and operates on a case which had been previously tried in the court of common pleas, and sent back by the supreme court for a new trial, so as to change the principle of law then decided by the supreme court, that the defendant, though a tenant, might contest the title of his landlord. Satterlee *v.* Mathewson, 2 *Peters's Rep.* 380. In Underwood *v.* Lilly, and in Tate and wife *v.* Stoolzfoos et al., the court holds this language. "The general rule is, that all laws are in their nature prospective, yet this does not prohibit the legislature from passing some laws which have a retrospective operation. When the laws do not impair the obligation of contracts, or are not *ex post facto* laws, every confirmatory act is in its nature retrospective." "Deeds acknowledged *defectively* by feme coverts, proceedings and judgments of commissioners and justices of the peace, who were not commissioned agreeably to the constitution, or where their power ceased on the division of counties until a new appointment. Retrospective laws, which only vary the remedies, divest no right, but merely cure a defect in the proceedings otherwise fair."

I will now examine the constitutionality of the act of the 6th of April 1833.

It cannot be denied that the legislature have the power to authorize the taking of private property for the public streets, upon making just compensation. The right of resumption not only results from the right of eminent domain, but it is recognized in the constitution of this state, with this statutory reservation, that the property of the citizen shall not be taken and applied to public use without the consent of his representatives, and without just compensation being made. With this restriction it may be exercised, not only when the safety, but also when the interest or expediency of the state is concerned; as where land of an individual is wanted for a road, street, canal, railroad, or other public improvement. A provision for compensation is a necessary attendant on the due and constitutional exercise of the power of the legislature to deprive an individual of his property without his consent; and this principle, in American jurisprudence, is founded on natural equity, and is laid down by the most eminent jurists as an acknowledged principle of universal law. 2 *Kent's Com.* 339. These principles do not seem to be denied, but it is contended that the act of the 6th of April 1833 does not give a just compensation within the meaning of the constitution. I understand the counsel to base his argument on the decision of the court in Vanhorne's Lessee *v.* Dorrance, 2 *Dall.* 315, that no just compensation can be made except in money, and that the legislature have not the constitutional power to authorize the viewers to take into consideration the advantages accruing, as well as the injury done ;

[M'Masters v. The Commonwealth.]

and more particularly, that they cannot apportion the damages upon the lots benefited according to a fair estimate of the benefit conferred. In the case cited, Justice Patterson, who held the circuit court for the district of Pennsylvania, declared the granting and confirming act passed by the legislature null and void : and among other reasons, on account of the nature of the compensation, which by the act was to be land, and not in money. He observes, that "no just compensation can be made except in money. Money is a common standard, by comparison with which the value of any thing may be ascertained. It is not only a sign which represents the respective value of commodities, but is a universal medium, easily portable, liable to little variation, and readily exchanged for any kind of property. Compensation is a recompense in value, a *quid pro quo*, and must be in money. True it is that land, or any thing else, may be a compensation, but then it must be at the election of the party; it cannot be forced upon him. His consent will legalize the act and make it valid ; nothing short of it will have the effect." It is very true that there is a primary convenience in money as a medium of commercial exchange, but I do not feel the force of the reasoning by which the court forms this conclusion, to deduce a conclusion from this against the exercising of a constitutional power in the legislature. It is an inference drawn from its supposed advantages, but certainly not an express requirement of the constitution, which in general terms declares, that no man's property shall be taken or applied to public use without the consent of his representatives, and without just compensation being made. As the legislature have the undoubted right to determine when the public interest requires the assumption of private property, so it seems to me to be the better construction of the constitution, that it shall rest in their wisdom to determine the nature and kind of the compensation to be made, and also to point out the tribunal by whom the amount may be ascertained. Experience has shown that the commonwealth, rather than individuals, has most reason to complain of the assessment of damages where land has been appropriated to public use. A writ of error was taken in Vanhorne's Lessee, but never prosecuted in consequence of the repeal of the law which gave rise to the controversy. Although the principles of that case have not been directly reviewed, yet the soundness of the positions taken by the judge have been doubted on more than one occasion, and particularly by Justice Huston in Satterlee *v.* Mathewson, 16 *Serg. & Rawle* 179. He observes that it is not easy to determine whether the misapprehension of the facts in the cause, or the misapplication of the law to the facts, is most conspicuous. However this may be, yet there is one thing certain, that if this be considered a correct exposition of the constitution, the legislature have violated the provision in question in more instances than one. In almost every turnpike act, in the estimation of damages, the viewers are required to take into consideration the advantages accruing, as well as the injury done to the

owner of the land. The same principle is ingrafted into the canal system of this state, and numberless assessments have been made under it without, so far as I know, an objection from a single individual. The equity of the principle must strike the sense of justice of every man. The owner of the land is entitled to a just compention it is true, and no person wishes to deprive him of it; but if the, improvement made is a benefit rather than an injury, of what has he a just ground to complain? It would be inequitable as regards the public, and would moreover impede the prosperity of the commonwealth, that an individual whose property has been enhanced in value probably fourfold, should nevertheless still require payment out of the public coffers of the full value of the land. The injustice of this would be most manifest in Pennsylvania, where the vendee, as an equivalent for roads and highways, receives six per cent on the amount of his purchase.

But the act goes still farther. It not only authorizes the viewers to take into consideration the advantages, &c., but it also authorizes them to assess the lots benefited for the advantage of those who may be injured by the improvement, and it is of this the counsel chiefly complain. This is certainly a new feature which is introduced into the statutes of this state, but I do not conceive that the principle is new. It is copied from New York, where it has been in operation for some time, and where it has received the benefit of a judicial construction in the case of Livingston v. The Mayor of New York, 8 *Wend.* 85. The owner of property taken is entitled to a full compensation for the damages he sustains thereby, but if the taking of his property for the public improvement is a benefit rather than an injury to him, he certainly has no equitable claim to damages. Besides, it is a well settled principle that when any particular county, district or neighbourhood is exclusively benefited by a public improvement, the inhabitants of that district may be taxed for the whole expense of the improvement, and in proportion to the supposed benefit received by each. If the whole value of the property taken for a street is allowed to the individual owners, the proprietors of the adjacent lots must be assessed for the purpose of paying that amount; and if the individual whose property is taken is the owner of a lot adjacent, that lot must be assessed rateably with the others. If these principles are correct, and they cannot be doubted, it decides the question; for if a county, district or town can be assessed for a public improvement, on the ground that they are particularly benefited, there can be no constitutional reason to exempt an individual from assessment on the same principle. It becomes a question of expediency, of which the legislature are the competent and exclusive judges, and not of right. This is a power that must be used with great caution; but these are considerations that must be addressed to the legislature, rather than to the courts. The only restriction upon the power of the legislature, where the public at large, the inhabitants of any particular section of a state, or a town, or an indivi-

[M'Masters v. The Commonwealth.]

dual, have an interest in the contemplated improvement, as citizens merely, is that the property shall not be taken without just compensation to the owner, and in the mode prescribed by law. Whether the right of eminent domain implies a right in the sovereign power to take the property óf one citizen and transfer it to another, even for a full compensation, when the public interest will be in no way promoted by such a transfer, it is immaterial to say, as probably such a case will never arise under such circumstances as will authorize a court of justice to interfere. That this great power may be abused there can be no doubt, but that it has been in this case we are not at liberty to suppose. The court of common pleas has affirmed the report of the viewers on the ground, certainly, that the property of the defendant has been benefited to the amount of the assessment. There is, therefore, nothing contrary to natural right, and there is nothing in the constitutional objections which have been made.

Judgment affirmed.