## EBENEZER SIMMONS *et al. versus* The Inhabitants of HANOVER *et al.*

The provision in *St.* 1839, *c.* 60, that no order or decree previously made by this Court, in any suit in equity by any inhabitant of a town, founded on an alleged violation of the *St.* 1837, *c.* 85, § 4, regulating the disposition by towns of their portions of the surplus revenue of the United States, shall be discharged or invalidated on account of want of jurisdiction in the Court, was *held* to be constitutional and valid.

A town, which had received its portion of the surplus revenue of the United States, under *St.* 1837, *c.* 85, voted, that the same should be lent equally to each and every inhabitant, that the notes of the individuals receiving the money, should be taken therefor, payable when the State government should call for the money, and that sureties should not be required on such notes. *Held*, that such a disposition of the money would be a violation of the provision of the statute, that towns shall apply their portions of such surplus revenue, or the interest thereof, to those public objects of expenditure, for which they might lawfully raise and appropriate money, and to no other purpose.

In a bill in equity brought, under *St.* 1839, *c.* 60, by certain inhabitants of a town to restrain the town from applying its portion of the surplus revenue in a manner not authorized by law, the plaintiffs averred, that they were inhabitants of the town and men of property, liable to be taxed therein, and that the application of the money contemplated by the town, would be a direct injury to them. It was *held*, that the plaintiffs had such an interest in the money and in its application, as would entitle them to maintain such bill, if any qualification of interest were necessary. But *it seems*, that no qualification of interest is requisite for this purpose.

THIS was a bill in equity, filed by certain inhabitants of the town of Hanover, setting forth, that on the 23d of June, 1836, an act was passed by the congress of the United States, by which it was provided, that the money which should be in the treasury of the United States on the 1st of January, 1837, reserving the sum of $5,000,000, should be deposited with such of the several States, in proportion to their respective representation in the senate and house of representatives of the United States, as should authorize their treasurers, or other competent authorities, to receive the same on the terms and at the times specified in the act ; that on the 19th of January, 1837, an act was passed by the legislature of this Commonwealth, by which the treasurer of the Commonwealth was authorized to receive, on the terms prescribed by the act of congress, the proportion of the money in question which might be deposited with this Commonwealth, and to pledge the faith of

the State for the safe keeping and repayment thereof; that the treasurer of the Commonwealth, accordingly, in the course of the year 1837, received three instalments of the money, amounting to the sum of $ 1,358,173·58 ; and that, on the 21st of March, 1837, an act was passed, by the legislature of this Commonwealth, providing, that the money so deposited, except the sum of $ 2500, should be deposited with those towns in the Commonwealth, which should agree to receive the same, in proportion to their respective populations, and that the money so deposited, or the interest upon the same, should be applied by such towns, to those public objects of expenditure for which they might then lawfully raise and appropriate money, and to no other purpose.

The bill further set forth, that, on the 3d of April, 1837, the inhabitants of Hanover, at a legal town meeting duly warned for the purpose, agreed to receive their portion of the surplus money and empowered their treasurer to receive the same ; that in June and July following, the inhabitants, by their treasurer, received two sums of money amounting to $ 2812·50, being their portion of the money so deposited with the Commonwealth ; that at a town meeting on the 2d of April, 1838, a vote was passed, providing that such money should be lent, equally, to each and every inhabitant of the town ; that at another meeting on the 21st of the same month, three agents were chosen to recall and receive the surplus money from the persons to whom it had before been lent on sufficient security, and such agents were authorized to take the notes of the individuals who were entitled to receive it according to the vote passed on the 2d of April, which notes were to be payable when the State government should call for the money ; that on a motion being made at such meeting to require good and sufficient bondsmen on every note so given, it was voted, that the town would not require such bondsmen ; that at another town meeting on the 7th of July, 1838, William Morse and Oren Josselyn, two of the defendants, and Thomas M. Bates, were chosen agents for the purpose of carrying into effect the votes of the town respecting the surplus revenue, and the town treasurer was directed to call in and pay over immediately to them the surplus money belonging to the town, and that some

of the complainants were present at such meetings, and all of them who were so present, opposed and voted against the passage of all such votes, and that none of the complainants ever assented to any of such votes.

The bill further set forth, that Albert White, the treasurer of the town, refused to pay over the surplus money to the agents so chosen, under the belief, that he had no authority so to do ; that at a town meeting on the 4th of March, 1839, Oren Josselyn was chosen treasurer of the. town ; and that threats had, from time to time, been made, that the surplus money would now be lent and distributed in conformity with such votes, and that Josselyn, as treasurer of the town, would carry them into effect.

The bill further averred, that the complainants were inhabitants of Hanover, and men of property, liable to be taxed therein according to law ; that the contemplated lending and distribution of the surplus money would be a direct injury to them, and a violation of the trusts upon which it was delivered to and received by the town ; that upon the receipt thereof, the town became bound to repay the same, whenever it should be required by the treasurer of the Commonwealth, to be by him refunded to the secretary of the treasury of the United States ; that if the money should be lent and distributed according to the votes of the town, without security, a large part thereof would be lost, and the complainants and other responsible inhabitants of the town would be compelled to repay to the Commonwealth the amount so lost ; that such loan and distribution was not a public object of expenditure for which the town might lawfully have raised and appropriated money on the 21st of March, 1837, and, therefore, that the same would be illegal and contrary to the act by virtue of which the money was received.

Wherefore the bill prayed, that the defendants might be required to answer, that the Court would make such decree in the premises as might be proper and necessary for enforcing and regulating the execution of the trusts under which the money was paid to the town, that the defendants and all persons having custody or control of the money and trust fund, might be estrained, by injunction, from lending and distributing it ac-

cording to the votes of the town, or in any other way than for the purposes provided by the act under which it was paid to the town, and that the complainants might have such other and further relief in the premises as the nature of the case might require and to the Court might seem meet.

The defendants demurred for the following causes : —

Because the plaintiffs had not set forth in their bill such a case as was, at the time of filing the bill and the service thereof, within the jurisdiction of this Court :

Because the plaintiffs had not set forth such a case as entitled or enabled them to institute or maintain this suit or to demand or have any discovery or relief in the premises : and ,

Because the bill did not contain any matter of equity, wherein this Court, at the time of the filing and service of the same, could require the defendants to answer or ground any decree, or give the plaintiffs any relief ; and any jurisdiction of the subject matter, if given to this Court by statute or otherwise, subsequently to the filing and service of the bill, could not extend to the original filing and service thereof, or bring the defendants under any liability in the premises.

*B. F. Hallett*, for the defendants, to the point, that the bill did not present a case for the equitable interposition of the Court, cited Story's Eq. Pl. § 472 ; and that the deposit of this money with the town, did not create a trust, or if it did, that it was a trust for the Commonwealth and not for the individual inhabitants of the town, and that the bill, therefore, disclosed no equitable interest in the plaintiffs, entitling them to relief in equity, *Attorney- General* v. *Utica Ins. Co.* 2 Johns. Ch. R. 389 ; *Verplanck* v. *Merc. Ins. Co.* 2 Paige, 438 ; *Verplanck* v. *Merc. Ins. Co.* 1 Edwards, 87.

*P. Sprague* and *W. Baylies*, for the plaintiffs, to the point, that the *St.* 1839, *c.* 60, vesting this Court with jurisdiction in equity over cases of alleged violations of the *St.* 1837, *c.* 85, § 4, and confirming all orders or decrees of the Court, or of any judge thereof, previously made in any such case, was constitutional and valid, cited *Foster* v. *Essex Bank*, 16 Mass. R. 245 ; *Locke* v. *Dane*, 9 Mass. R. 360 ; *Underwood* v. *Lilly*, 10 Serg. & Rawle, 101 ; *Tate* v. *Stooltzfoos*, 16 Serg. & Rawle, 35 ; *Bleakney* v. *Farmers & Mechanics' Bank*, 17

*Oct.* 25th.

Serg. & Rawle, 64 ; 1 Kent's Comm. 455, 456 ; and that the disposition of the money contemplated by the votes in question, was illegal, *Hooper* v. *Emery*, 14 Maine R. (2 Shepley,) 375.

WILDE J. delivered the opinion of the Court. At the argument of this cause on the demurrer to the bill, two questions were submitted to the consideration of the Court ; one of which is a question of jurisdiction, and the other is, whether upon the facts stated in the bill the plaintiffs are entitled to the relief prayed for.

As to the first question, it has been argued by the defendants' counsel, that at the time of the filing of the bill, this Court had no jurisdiction, unless the deposit of the town's portion of the surplus revenue of the United States can be considered as a trust for the benefit of the plaintiffs, and that it cannot be so considered ; that no such trust is stated in the bill ; and that no such trust was created by the act of the legislature, under which the deposit was made, but that it was a mere loan to the town. In one aspect of the cause, these grounds of defence would require great consideration ; but according to the view we have taken of the case, the question, whether the Court had jurisdiction at the time of filing the bill, becomes immaterial, and we have not considered it, because, by the *St.* 1839, *c.* 60, full jurisdiction is given to the Court in this and all similar cases, and all the proceedings of the Court previous to the passage of the law, are confirmed. By that statute it is enacted, that when any city or town shall have received any portion of the surplus revenue of the United States under the *St.* 1837, *c.* 85, the Supreme Judicial Court shall have power, on the suit or petition of any inhabitant of such city or town, to hear and determine in equity all cases of alleged violations of the provisions of the 4th section of the statute of 1837 ; and that no order or decree of such Court or of any judge thereof, heretofore made in such case, shall be discharged and invalidated on account of want of jurisdiction in the Court or judge, but that all such orders and decrees are thereby confirmed.

If this is a constitutional and valid act of the legislature, it is very clear that the jurisdiction of the Court cannot be questioned. The objection to it is, that the last clause confirming

the proceedings of the Court previous to the passage of the statute, is not valid and obligatory.

Upon the general question, whether any retrospective laws affecting vested rights are valid, there have been conflicting opinions. In the case of *Calder* v. *Bull*, 3 Dallas, 386, which is a leading case, Judge *Iredell* expresses a decided opinion, that the legislative power cannot be restrained except by some express provision in the constitution; and that retrospective laws not thus restrained, are clearly valid. Judge *Chase* was of a different opinion, but he admits, that retrospective laws may, in some cases, be proper and necessary. In the case of *Goshen* v. *Stonington*, 4 Connect. R. 210, *Hosmer* C. J., remarking upon these and other conflicting opinions, says: " With those judges who assert the omnipotence of the legislature in all cases where the constitution has not interposed an explicit restraint, I cannot agree. Should there exist, what I know is an incredible supposition, a case of the direct infraction of vested rights, too palpable to be questioned, and too unjust to admit of vindication, I could not avoid considering it a violation of the social compact, and within the control of the judiciary "; " on the other hand, I cannot harmonize with those who deny the power of the legislature to make laws, in any case, which, with entire justice, operate on antecedent legal rights. A retrospective law may be just and reasonable ; and the right of the legislature to enact one of this description, I am not speculatist enough to question."

In support of his opinion, Chief Justice *Hosmer* refers to the laws of this Commonwealth and the decisions of this Court.

In *Holbrook* v. *Phinney*, 4 Mass. R. 566, it was decided, that the *St.* 1785, *c.* 6, abolishing joint tenancies, was valid and binding in that case, although enacted subsequently to the execution of the deed creating the joint tenancy there in question. This statute, says *Parsons* C. J., has a retrospective effect, and comprehends this conveyance ; and there seems to be no constitutional objection to the power of the legislature to alter a tenure by substituting another tenure more beneficial to all the tenants.

But the conflicting opinions in these and many other cases, as to retrospective laws, do not affect the validity of the law

in question.   This is a remedial law, and unquestionably the legislature have the right to pass all just and reasonable reme-- dial laws for the general welfare, and to enforce existing obligations, although they may incidentally operate upon existing rights.   So they may take away one remedy and substitute another, although such change of remedy may affect the interests of individuals.   1 Kent's Comm. 456.   So the legislature have the right to confirm the proceedings of towns and other corporations, which have been void for some informality, and of reviving terms of court which have failed from accident. *Walter* v. *Bacon*, 8 Mass. R. 468.   So in *Tate* v. *Stooltz-foos*, 16 Serg. & Rawle, 35, it was held, that a statute confirming a sale of lands defectively acknowledged, was a valid law.   And in *Underwood* v. *Lilly*, 10 Serg. & Rawle, 97, it was decided, that the mis-entry of a judgment was cured by a subsequent statute, although a writ of error had issued before the passing of the act.

The *St.* 1817, *c.* 87, giving this Court jurisdiction in equity to enforce the execution of trusts, had a retrospective operation upon existing trusts and contracts, and created new responsibilities, but being a beneficial and remedial law, its validity has never been questioned.   So the statute renewing the charter of the Essex bank, though not accepted by the corporation, and though it subjected them to great responsibilities, was held a valid law, in the case. of *Foster* v. *Essex Bank*, 16 Mass. R. 245.   This case was ably argued and deliberately considered by the Court ; and it was held, that the statute violated no rights of the corporation, for they had no right to withhold their just debts from their creditors ; and that a remedial statute intended to enforce rights, and not to violate them, was clearly a valid law.

According to the principles laid down in these cases, it is very clear, that the statute in question is a valid and binding law.   It is a remedial statute, solely intended to prevent the violation of a previous law, and to enforce the obligation arising therefrom.   It cannot operate so as to violate the defendants' rights ; for its object is to compel them to the performance of their contract with the government.   It has been said, that the defendants had a vested right to recover costs in this

suit, which was taken away by the statute. But it is manifest, that a party has not a vested right in costs before judgment, in any case, and, in the present case, costs depend on the discretion of the Court.

We can have no doubt, therefore, that we have jurisdiction in this case ; and the only remaining question is, whether, upon the facts alleged in the bill, the plaintiffs are entitled to the relief prayed for. The bill alleges, that, on the 3d day of April, 1837, the defendants, at a legal meeting of the inhabitants, agreed to receive the proportion of the surplus revenue which should be coming to them under the act of 1837, *c.* 85, and authorized their treasurer to receive the same from the treasurer of the Commonwealth ; and that afterwards they received, by their treasurer, several sums of money, being their proportion of the 1st, 2d and 3d instalments of such surplus revenue.

The bill further alleges, that afterwards, on the 2d day of April 1838, at a legal town meeting of the town of Hanover, a vote was passed, by which it was provided, that such surplus should be lent equally to each and every inhabitant of the town ; that afterwards, at another legal town meeting of the town, three agents were chosen to recall and receive the surplus money from persons to whom it had been before lent on good security, and such agents were authorized to take the notes of the individuals, who were entitled to receive the money, according to the former vote of the town ; and that, on motion made at the same meeting to require good and sufficient bondsmen on each and every note given, it was voted that the town would not require bondsmen on notes given for such money.

That this vote for the distribution of the money, if it had been carried into effect, would have been a direct violation or palpable evasion of the terms of limitation of the 4th section of the statute of 1837, cannot, we think, be doubted. That section provided, that the town should apply the money so deposited with them, or the interest upon the same, to those public objects of expenditure for which they might lawfully raise and appropriate money, and to no other purpose. It was argued, that, by the Revised Stat. *c.* 15, § 11, towns are authorized to make any orders for the disposal or use of their corporate property, which they may judge necessary for the interest of the inhabitants ; and

that the town had the same power of disposal of the money deposited with them by the government. It is admitted, that this power of disposal is not consistent with the express words of the 4th section of the statute of 1837, but it was insisted, that the words "raise *and* appropriate" might be construed to mean "raise *or* appropriate." But there is no reason why the language of the statute should be thus construed ; on the contrary, the substitution of "or" for "and," would not accord with the evident meaning of the statute. And if such were the words of the statute, it would not vary its construction ; for the town were to apply the money deposited with them to public objects of expenditure, and to no other purpose ; and most certainly the distribution of the money among the inhabitants of the town for their own private use, would not be applying it to a public object of expenditure.

Then it was argued, that the town had the undoubted right to lend the money, and that the distribution of it among the inhabitants, was by way of loans. It is true, that it is so denominated in the vote of the town ; but, as to a portion of the money, it lacks one of the essential qualities of a loan. It was to be distributed equally to each and every inhabitant of the town, including paupers, if there were any, and all minors of whatever age, and all married women ; and the town refused to take any security except the notes of the persons respectively to whom the money should be paid. The notes of married women and minors would not be obligatory ; and therefore the money to be paid to them, would amount to a gift, although denominated a loan. The money thus withdrawn from the treasury could not, by law, be recovered, and consequently could not be appropriated according to the directions of the statute. That such a misapplication of the money would be a violation of the 4th section of the statute, by virtue of which the money was received, seems to us exceedingly clear.

Another objection to the bill, upon which considerable stress has been laid, was founded on a supposed defect of the law previous to the statute of 1839. It was urged, that no trust was created by the deposit of the money with the town ; or, if any, that it was a public trust for the Commonwealth and not for the individual inhabitants, and, consequently, that the

bill discloses no equitable interest in the plaintiffs which entitles them to maintain their suit. It has been already remarked, that we consider it immaterial, whether the defendants held the money in trust for the plaintiffs or not, or whether the Court had jurisdiction or not, previously to the statute of 1839, since, by that statute, jurisdiction is expressly given and all former proceedings are confirmed. And, as to the objection, that the bill discloses no equitable interest in the plaintiffs, the answer is, that the plaintiffs aver in their bill, that they are inhabitants of the town of Hanover, and men of property, and are liable to be taxed in the town according to law, and that such a lending or distribution of the surplus money, as is contemplated by such votes of the town, would be a direct injury to the plaintiffs. It is immaterial whether this liability to taxation and consequent injury, be contingent or certain. In either case, the plaintiffs have an equitable interest in the deposit and its use and application. But we do not hold it necessary for the plaintiffs to show, that they have any interest in the deposit, or its application. For by the statute of 1839, any inhabitant of the town of Hanover may maintain a suit in equity, by bill or petition, in order to restrain the town from the violation of any of the provisions of the 4th section of the statute of 1837.

The object of the statute of 1839 was, to prevent the violation of the former statute, and if its language were doubtful, it should be so construed as to enlarge rather than to limit the means of enforcing it. The language of the statute, however, is not doubtful. No qualification of interest is required to authorize any inhabitant to maintain a suit; and we can perceive no good reason why any such qualification should be required. This point is not material in the present case, but may be of importance in other suits. Whether the plaintiffs are bound to show that they have an interest in the application of the deposit or not, they are clearly entitled to maintain their suit, unless the defendants can disprove the facts alleged in the bill.

*Demurrer overruled*