Birchard, Judge,
dissenting. This is an ejectment, brought originally in the Court of Common Pleas, where the plaintiff recovered, and the defendant appealed to this court. The case depends upon the validity of a deed executed by George Zercher, and Elizabeth his wife, to John Glass, for the conveyance of one hundred and fifty acres of land, for the sum of $550, paid in hand, on the 9th day of April, 1828. The deed was in due form, and would have passed the title of Elizabeth Zercher, if the certificate of acknowledgment by the magistrate had been indorsed upon it in due form.
The law in force at the time was the act of February 24, 1820, which provides “ that when a husband and wife, etc., shall execute a deed, etc., it shall be signed and sealed by the husband, and the signing and sealing thereof shall be acknowledged by them in the presence of two subscribing witnesses, who shall attest the acknowledgment of such signing and sealing, and also be acknowledged before a judge or justice of the peace, who shall examine the wife, separate and apart from her said husband, and shall read, or otherwise make known to her, the contents of such deed, etc.; and if, upon such examination, she shall declare that she voluntarily, and of her own free will and accord, *371 without fear or coercion of her husband did, and now doth acknowledge the signing and sealing thereof, the said *judge or justice [370 shall certify the same, together with the acknowledgment of the husband, on the same sheet on which such deed, etc., shall be printed or written.” 2 Chase, 1139, sec. 2.
The opinion of the majority of the court turns wholly upon the validity of the act of the Legislature, passed March 9th, 1835. The opinion holds that this statute is unconstitutional and void. ' From that conclusion I dissent altogether. The decision is of vast importance. If it be law, sad indeed is the fate of thousands who now repose in peace under the delusive belief that they are bona fide owners of their homes, with complete record evidence of a good title thereto. Probably not one deed in ten, executed in this State since 1820, is good under this decision; and, from my own knowledge of titles in the State of Ohio, I think I hazard, nothing in expressing the opinion, that not less than fifty millions in value of real estate will be affected by it. When such consequences must be the result of a principle, I can not conceive that I should discharge the duty that the public may claim of me, under the law which requires the dissenting judge to give the reasons of his opinion, were I to content myself by briefly stating, that “ my reason for dissenting is, that the opinion is not law ; ” and yet that would be the substance of my objection.
I will endeavor to .show, by authority, that this objection to tho opinion is well taken. Our statute of 1820, so far as this question is concerned, is, substantially, a transcript of the Pennsylvania statute of 1770, on the same subject. In that State, as in this, the justices, etc., taking the acknowledgments of deeds, from husband and wife, had for years fallen into a habit of abbreviating the certificate required by the act. The courts in that State, as has this court in like cases, held the certificates defective, and the owners of the land there, as here, failed to maintain their titles solely on that ground. In 1826, the evil had become so great as to induce the Legislature of Pennsylvania to enact a law declaring “ that no grant, bargain, sale, feoffment, deed of conveyance, lease, release or other assurance of any lands, tenements or hereditaments whatsoever, ^heretofore bona fide, made and ex- [37Í ecuted by husband and wife, and acknowledged by them before some judge, justice of the peace, etc., shall be deemed, held or adjudged invalid, or defective, or insufficient in law, or avoided or prejudiced, by reason of any informality or omission in setting forth the particulars of the acknowledgment made before such officer, as aforesaid, in the *372 certificate thereof.” The act proceeds to declare, that all such instruments “ shall he as good, valid and effectual in law, for transferring, etc , the estate, right, title and interest of such husband and wife, etc,, as if all the requisites and particulars of such acknowledgment, mentioned in the act of 1770, were particularly set forth in the certificate thereof, or appeared on the face of the same.”
This statute is broader than the statute of Ohio now under consideration — was framed to meet a class of cases identical with those in-this state, by a legislative assembly limited by constitutional restrictions equally stringent with our own ; and, I may say, owing equal allegiance to the great and fundamental principles of natural right. As early as the year 1827 the Pennsylvania statute was brought before the Supreme Court of that state, and its constitutionality was affirmed. The court held that the defect of the certificate of acknowledgment was cured by the act of 1826. Tate and wife v. Stooltzfoos et al., 16 Serg. & Rawle, 35. Duncan, J., in delivering the unanimous opinion of the court in that case, remarked: — “ It is next objected, that the act of 1826 is unconstitutional. The general rule is, that all laws are, in their nature, prospective, yet this does not prohibit the Legislature from passing some laws which have a retrospective operation. Where the law does not impair the obligation of contracts, or is not ex post facto, every confirmatory act is, in its nature, retrospective ; and, in the opinion of the court delivered in Underwood v. Libby, 10 Serg. & Rawle, 101, it is stated that confirming acts are not uncommon : deeds acknowledged defectively by femes covert, proceedings and judgments of commissioners and justices of the peace, who were not commissioned agreeably to the constitution, or when their power ceased, on the 372] *division of counties, until a new appointment. Retrospective laws which only vary the remedies, divest no right, but merely cure a defect in proceedings, otherwise fair; the omission of formalities which do not diminish existing obligations, contrary to their situation, when entered into. These, and several like acts, are clearly constitutional.” I have seen no reason to change that opinion. It is an abuse of terms to contend that this is an act divesting vested rights. Such acts would be odious and unjust, as well as unconstitutional ; for it is not intended by a vested right, that it shall be a right to do wrong; to take advantage of a mere slip in form, when the transaction is a bona fide one, and to avoid an honest conveyance, fairly acknowledged, in the hands of an innocent purchaser.
In Massachusetts, “ statutes made to confirm acts by public officers, *373 which would have been void for some informality, have never been questioned on constitutional grounds.” Bond v. Appleton, 8 Mass. 472.
Such has been the law in a sister state for the last eighteen years. The doctrine in the case before cited, 16 Serg. & Rawle, 35, has been affirmed and recognized as law as often as the question has arisen in that state. Shall it be said that a state with a people so enlightened as the people of that state are, with a bar eminent for its learning, and a judiciary exceeded by none for its integrity of purpose and independence of character, have tolerated, since 1826, a legislative act of the character which the opinion of this court would make it ?
The opinions of others give a conclusive negative. In 1834 the-same statute was brought before the Supreme Court of the United States, in the case of Watson et al. v. Mercer, 8 Peters, 109, and was sustained by the unanimous opinion of every member of that eminent tribunal, upon full argument. Did those' to whom the best of men have ever looked as the sheet anchor of our hope, when the constitution was assailed, prove treacherous to their high trust on that occasion ? Did it connive at a violation of the Constitution of Pennsylvania, by traveling out of the record to volunteer an opinion, erroneous in itself, in support of the act of 1826 ? No, it did neither. It ^proved faithful to the country by a discharge of its whole duty, [373 and no more. But it spoke thus : “ In the ease of The Lessee of Watson and wife v. Bailey, 1 Binney, 470, the acknowledgment of this very deed, from Mercer and wife to Thompson, was held to be fatally defective to pass her title. But the act of 1826 has been repeatedly held by the Supreme Court of Pennsylvania to be constitutional, and to give validity to such defective acknowledgments. It was so held in Barnett v. Barnett, 15 Serg. & Rawle, 72, and Tate and wife v. Stooltzfoos, 16 Serg. & Rawle, 35 ; and again, upon solemn deliberation and-•argument, in the ease now before the court.”
And again, in the same case, “ the argument for the plaintiffs in-error is, first, that the act violates the constitution of the United States, because it divests their vested rights, as heirs at law, of the premises in question ; and, secondly, that it violates the obligations of a contract, etc.” “ As to the first point, it is clear that this court has-no right to pronounce an act of the State Legislature void, as contrary to the Constitution of the United States, from the mere fact that it divests antecedent vested rights of property. The Constitution of the United States does not prohibit the states from passing retrospective laws generally,” etc.
*374 “ In the next place, does the act of 1826 violate the obligation of any contract? In our judgment, it certainly does not, either in its terms or principles. It does not even affect to touch any title acquired by a patent, or any other grant. It supposes the titles of the femes covert to be good, however acquired, and only provides that deeds of conveyance made by them shall not be void, because there is a defective acknowledgment of the deeds by which they have sought to transfer their titles. So far, then, as it has any legal operation, it goes to ■confirm, and not to impair, the contract of the feme covert. It gives the very effect to their acts and contracts which they intended to give, and which, from mistake or accident, has not been effected.”
*Why is it that the language of Justice Story is inapplicable to the act of 1835? Was not our statute intended to confirm, and not to impair, a contract ? Does it not give effect, and the precise effect to the deed in question, which Elizabeth Zercher intended ? No one doubts this ; yet it is said that the act, if effective, transfers the property of the woman, and that the transfer is not made by her own act. That, being a feme covert, her legal existence is, by the common law, merged during coverture, and that, therefore, living with her husband, she can do no act binding upon herself, independent of the statute. Admitting the existence and force of the position, and the conclusion based upon it, it by no means follows, that the transfer is the act of the Legislature, and not of the feme covert. Look at the question. See what is the disability, and how it was remedied. The common law rule held the wife incapable of acting in any way, during coverture, to divest herself of title to real estate ; and her husband, in whose existence, by a fiction of law, her own was merged, could not alien that to which he had no title. This produced an evil which was to be remedied, and the remedy was provided by the act of February 24, 1820. But how is it effected? The answer is given in the •statute. The husband and wife shall execute the deed by signing and sealing it in the presence of two subscribing witnesses, and by acknowledging it in the presence of the witnesses. The statute provides what this execution and acknowledgment shall be. Suppose all this done, and the deed delivered. It constitutes every thing that the law requires the parties to do to pass the title to the grantee. Yet my brethren .hold, not only that the title does not pass, but that, as against the grantor, it creates no equity. Why ? Certainly not because the grantor has omitted any act to be done by her, for the supposed case assumes that she has done every thing necessary for her to do in order to divest *376 her title. So far as the vendor and vendee are concerned, the sale is -complete — their trade is made — the alienation is perfected ; and, before G-od and in conscience, the title and equity of the wife is in the vendee. What remains to be done, is merely to perfect the *evi- [375 denee of the transfer by indorsing upon the deed the certificate of acknowledgment, and this is to be done by a magistrate. It is a mere clerical act. If correctly done, the deed is good, and the vendee’s title is secure. If incorrectly done, the proper evidence of the sale is not procured, and this is all. Lessee of Foster v. Dennison, 9 Ohio, 125. The Legislature undertook to heal the defect, by enacting a law' that gives a new rule of evidence. If the power is wanting to enable them to do this, then may it be said that the sovereign power of the state is impotent indeed. That there are eases where the demands of justice require an authority to be exercised to prevent wrongs, injustice, and what, to a moralist, must be regarded as an iniquitous fraud, and yet there is no authority efficient to redress the wrong and to defeat the fraud. It is to my mind strange that, by the term property, which the constitution declares shall be inviolate, any one should understand a claim like this, which can not be honestly made. A construction so broad would strip the courts of chancery of three-fourths of their power; for we daily, and as often as the case occurs, put the titles of estates where equity and good conscience require they should be, and, under the statute, this result is effected by the operation of the decree, independent of the act of the party. The act of 1835 enables a court of law to accomplish just what a court of equity ought to do in a similar case, upon principles of common justice.
Will any moralist pretend to justify either man or woman in violating a bona fide contract of sale, by reclaiming property fairly sold, for which they have received the full value? Is it less unjust, because the evidence of sale is imperfect? If not, then away with the pretence that the Legislature of Ohio undertook to divest a vested right, and adopt the sound common sense of the Supreme Court of Pennsylvania,- by holding it an abuse of terms to consider that “ a vested right” which, in sober truth, is but an unjust claim — of a right to do wrong — a privilege of acting in a way that does violence to conscience. I apprehend that the framers of our Constitution, when preparing that instrument, had higher, nobler objects in view, than the creation *of a shield to secure to the dishonest the fruits of iniquity ; [376 and, while life lasts, I shall ever reluctantly, and only when forced by authority, employ it for such a purpose. But the legislation of 1835 *377 does not stand alone in Ohio. The statute of 1810, for the relief of occupying claimants, was retrospective. It gave the value of improvements made prior to its passage, to the occupant, and entitled him to a judgment against the person evicting him. This law has been uniformly sustained in Ohio ; Lessee of Hunt v. McMahan, 5 Ohio, 133, and in the Supreme Court of the United States. Bank of Hamilton v. Lessee of Dunlevy, 2 Peters, 492.
In January, 1837, an act was passed giving validity to certain deeds-acknowledged before the Mayor of Cincinnati, an officer supposed not to be authorized to take such acknowledgments, between the 10th of January, 1815, and the 5th of February, 1819. I have never heard that the constitutionality of that act was seriously questioned. This court has treated it as valid in cases upon the circuit; yet its whole effect was retrospective, and it divested the bona fide grantors of the vested right to act in bad faith, to the same extent as does the act under consideration. Indeed, analogous cases are to be found every where. Scarce a statute or book of reports can be opened without disclosing them. Foster v. Essex Bank, 16 Mass. 245, and the cases there cited.