## Morewood Avenue.   Chambers's Appeal.

[Marked to be reported.]

*Municipalities—Streets—Benefits—Assessments—Paving—Constitutional law—Taxation—Act of May 16, 1891.*

Local assessments, which are a species of taxation, can be made only for improvements which confer peculiar local benefits upon property which adjoins the improvement, and even then they cannot be made if the property has once before been subjected to such an assessment.

It is not competent to assess the cost of grading, paving and curbing a part of one street in a city, upon properties not situate upon the street to be improved, although within "the neighborhood" of the improvement. Such an assessment is not authorized by the act of May 16, 1891, P. L. 71, although the 5th clause of the 1st section of that act provides that "the viewers shall visit the improvement and personally inspect the same, and also visit and inspect the properties in the neighborhood supposed to be damaged or benefited thereby."

*Streets—Viewers—Improvements—Damages.*

Proceedings to assess damages and benefits for the grading and paving of a street in a city of the second class are fatally defective, if the viewers base their estimate of damages entirely upon the certificate of the Chief of the Department of Public Works as to the contract price of the work done, and not upon the value thereof.

Argued Oct. 23, 1893.   Appeals, Nos. 13, 16, 17, 18, 19, 20, 21, Oct. T., 1893, by Mrs. Alexander Chambers, Mrs. Emma V. Adams, W. L. Abbott, Mrs. L. V. Childs, John R. McGinley, J. M. Schoonmaker and E. M. Ferguson, from orders of C. P. No. 3, Allegheny Co., May T., 1892, No. 117, dismissing exceptions to report of street viewers.   Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to report of viewers appointed to assess damages and benefits for grading, paving and curbing Morewood avenue, formerly Barton street, between Fifth avenue and Forbes street, in the city of Pittsburgh.

The viewers after reciting notice of meeting, etc., reported:

"That they visited and personally inspected the improvement, and personally inspected the properties in the neighborhood supposed to be damaged or benefited.   That at the time and place fixed they heard all parties appearing before them, and adjourned from time to time, and gave a full hearing to all

parties interested upon all questions and claims before them, and proceeded to ascertain and determine the total damages, costs and expenses of the improvement, and to assess the same fairly and ratably upon the properties specially benefited thereby.

"That the improvement is the grading, paving and curbing of Barton street, (now Morewood avenue,) and was made from Fifth avenue to Forbes street, Twenty-second ward."

"That, having completed their work, they gave notice, by advertisement, as required by law, copy of which is hereto attached and made part hereof, that their report was ready and that, upon the day in said notice or advertisement named, they would present the same to court for approval, and in the meantime their report would remain at the place in said notice or advertisement named for inspection and exception.

"That, exceptions having been in the meantime filed to said report, the said viewers gave a full hearing thereon to the exceptants, and all parties claiming a right to be heard, and, after such hearing and upon due consideration, found no reason, in justice or equity, to modify the same.

"That said viewers thereupon fixed the 13th day of July, A. D. 1892, as the one upon which their report would be filed, and gave notice thereof to all parties in interest.

"The damages, costs and expenses of the improvement, the properties in the neighborhood peculiarly benefited by said improvement, and the name or names of the owner, or reputed owner of each parcel, the amount of damages allowed in each case, and the amount of benefits assessed against each property, and what amount of damages, costs and expenses are not assessed upon property peculiarly benefited thereby, we find and report as follows, namely :

"We find the total amount of damages, costs and expenses of the improvement to be $34,456.22.

"The damages allowed by us are fully set forth as follows :

| | | | | |
|---|---|---|---|---|
| Mary A. Forse | . | . | . | $ 800 00 |
| Olivia C. Warren | . | . | . | 2,000 00—$2,800 00 |

"Chief of Department of Public Works statement of cost:

| | | |
|---|---|---|
| 36,966 cubic yards grading, at 0.50 | $18,483 00 | |
| 3,401 square " paving, at 3.35 | 11,393 35 | |
| 2,025 lineal feet curbing, at 0.87 | 1,761 75 | |
| Extra work as per voucher . . | 18 12—$34,456 22 | |

" For the payment of all the damages, costs and expenses of the improvement, we have made and report the following assessment of benefits upon and against the properties we find peculiarly benefited by the same, to wit: $13,359.49." Here follow the names of the owners of properties on Morewood avenue, and also the names of certain property owners, including appellants, whose property abutted on Morewood avenue beyond Fifth avenue, and on Forbes street and Fifth avenue, which cross Morewood avenue at right angles.

Exceptions were filed by E. C. Ferguson and J. R. McGinley, alleging that their properties were not on Morewood avenue between Fifth avenue and Forbes street, but in the same neighborhood on Morewood avenue beyond Fifth avenue and on Fifth avenue and on Forbes street, which streets had been opened, graded and paved and assessments paid by exceptants. The exceptions also averred that [the assessments for benefits in this case were illegal.] [3]

The court made the following order:

" And now, to wit, October 22, 1892, this cause having come on to be heard upon various exceptions filed to the report of the board of viewers, and, after argument thereon by counsel, and upon due consideration thereof, the court overrule and dismiss all the exceptions, and hereby confirm the report of the said board of viewers absolutely, and order and direct the prothonotary to certify a copy of the report and this order to the treasurer of the city of Pittsburgh, to be by him proceeded in according to law."

*Errors assigned* were (1) above order, quoting it; (2) in not sustaining exceptions and setting aside report; and (3) in not sustaining exception in brackets, quoting it.

*George B. Gordon, John Dalzell* and *William Scott* with him, for appellants.—The proceedings in this case are fatally defective, because the viewers based their estimate of damages entirely upon the certificate of the chief of the department of public works as to the contract price of the work done, and not upon the value thereof: Bingaman v. Pittsburgh, 147 Pa. 353; Travers' Ap., 152 Pa. 133; Wilson's Ap., 152 Pa. 137.

The proceedings of the viewers are invalid in that they assess

a large amount of the cost of this improvement upon properties which do not abut or front upon the line of the proposed improvement, including the properties owned by appellants which front and abut upon other streets which were long ago graded and paved at the property owners' expense : Dillon, Mun. Corp. § 624 ; Alcorn v. Phila., 112 Pa. 498; Appeal of Orphans Asylum of Pittsburgh, 111 Pa. 144 ; Hammett v. Phila., 65 Pa. 155 ; Pittsburgh's Petition, 138 Pa. 401 ; Washington Avenue Case, 69 Pa. 363 ; Sawmill Run Bridge Case, 85 Pa. 163.

*William C. Moreland, Thomas D. Carnahan* with him, for appellee.—The chief of the department of public works gave no estimate upon which the viewers could possibly have fixed the damages. He did furnish a statement of the cost of the work, and we presume that what appellants mean is that the viewers based their finding of the total cost or value (exclusive of the damages) upon that statement. The damages were of course ascertained by the viewers. They "inspected the improvement and the properties in the *neighborhood*, supposed to be damaged or benefited." They heard the evidence submitted by those who claimed damages, and they found the damages to be $2,800. They heard all the evidence that was submitted as to the cost of the improvement.

The act of 1891 authorizes a portion of an assessment of the costs, damages and expenses of the grading, paving and curbing of a street, upon properties found to be peculiarly benefited thereby, but which do not abut upon the immediate line of improvement.

If the legislature had meant that only abutting properties should be assessed, it seems to us that it would have said so in unmistakable language.

In Webster, we find that "neighborhood" means "a place near ; " " vicinity ; " " the adjoining district or any place not distant ; " and therefore, when the viewers undertake to carry out the directions of the legislature, namely, " also visit and personally inspect the properties in the neighborhood supposed to be damaged or benefited," manifestly they fail in their duties if they visit and inspect only those properties which abut on the line of the improvement, because, while they are very near

and therefore in the neighborhood, there are other properties which are also " near," in the " vicinity," the " adjoining district," and are " not distant " therefrom.    These may or they may not be damaged or " peculiarly " benefited.

As to the question of reassessment, we reply that this is not a reassessment.    It is not Forbes street which is now improved. It is a new street, and if properties near it are peculiarly benefited by it, the owners cannot bring themselves within the principle of Hammett v. Phila., by showing that some other street has been improved.    They had received their local advantages from some other street, but not from this street.

The legislature evidently thought there was such a thing as peculiar benefits off the line of the improvement, and meant that such benefits, when found, should be ratably and fairly assessed : Rogers v. St. Paul, 22 Minn. 507 ; People v. Mayor, 63 N. Y. 291 ; Cooley, Taxation, 459 ; Extension of Hancock Street, 18 Pa. 26.

### MRS. ALEXANDER CHAMBERS'S APPEAL.

OPINION BY MR. JUSTICE GREEN, October 30, 1893 :

In this case the one question which overshadows and dominates all others is, whether it is competent to assess the cost of grading, paving and curbing a part of one street in a city, upon properties not situate upon the street to be improved, but being within " the neighborhood " of the improvement.

The authority for such an assessment is claimed to be found in the law of May 16, 1891, P. L. page 71.    It is not at all clear that the legislature ever intended to confer such a power by the act in question.    The first clause of the first section, which authorizes the presentation of a petition for viewers, directs that the petition shall ask for the appointment of viewers to assess damages, costs and expenses, etc., "and to fairly and ratably assess the said damages, cost and expenses upon the property benefited and to make report thereof to the court."    An appointment under such a petition would, of course, only authorize the assessment of benefits upon the properties abutting upon the improvement.

The fifth clause of the first section provides that " the viewers shall visit the improvement and personally inspect the same, and also visit and inspect the properties in the neighborhood

supposed to be damaged or benefited thereby." As the proper-
ties along the line of the improvement are assessable for the
cost of the improvement, and no purpose is expressed to assess
for benefits any other kinds of properties than such as are to
have their damages assessed, and as these latter can only be prop-
erties along the line of the improvement, the inference would
be that the location of both classes of properties would be the
same; and when the expression "in the neighborhood" des-
ignates the locality of the properties to be visited, whether for
damages or benefits, the expression being common to both, the
conclusion seems to be inevitable that only such properties, so
far as locality is concerned, can be assessed for benefits as are
entitled to have damages assessed.

In the second paragraph of the fifth clause the proceedings
of the viewers are prescribed thus: "they shall ascertain and
determine the total damages and costs and expenses of such
improvement, and these damages and costs and expenses they
shall fairly and ratably assess upon the properties benefited, but
not in any case to exceed the benefit peculiarly resulting from
such improvement."

The foregoing is the mandatory language of the act which
specifically directs what property is to be assessed for benefits,
and it contains nothing indicating that properties away from
the line of the improvement are to be assessed for benefits.

The act further in the same clause of the same section di-
rects, "If property peculiarly benefited to the full amount of
damages, costs and expenses cannot be found, the viewers shall
find the excess of damages, costs and expenses. They shall
thereupon prepare a report, together with a plan of the proper-
ties damaged and benefited, and their report shall set forth
what the improvement is, whether it be a sewer, or grading,
paving, macadamizing or other improvement of a street, lane,
or alley, the place and places where it was made, the damages,
costs and expenses of the improvement, the properties in the
neighborhood benefited peculiarly by said improvement, and
the name or names of the owner or reputed owner of each par-
cel, the amount of damages allowed in each case, and the
amount of benefits assessed against each property, and what
amount, if any, of damages, costs, and expenses, are not as-
sessed upon property peculiarly benefited thereby." Here

again no distinction is made as to locality between the properties which are to have their damages assessed, and those which are to be assessed for benefits; and, as the one class can only be those which are situated along the line of the improvement, the natural inference is that the other class must have the same locality.   Besides this there is nothing, either in the immediate text or the context of the act, which indicates that the legislature intended to make any distinction between the two classes of property, and especially to make so wide a departure from the long existing law of the commonwealth as to require that properties situated away from the line of the improvement should be compelled to pay, not only for all the improvements on their own streets, but also for improvements made on other streets, or at remote points on their own streets.   If the legislature had any such intention they could very easily have said so in language which could not be mistaken.   They cannot be held to have done so by mere doubtful implication from the use of a word which may just as well mean only the properties along the line of the improvement, as properties entirely away from it.   The words "in the neighborhood" are just as applicable to the properties along the line of the improvement as to properties away from it.   As the consequences of the interpretation asked for by the appellee would be so extremely onerous and oppressive, and so destructive of all property values, we will not adopt such a construction by the means of a mere implication.   Nothing but a clearly expressed legislative intent to the effect contended for will induce us to declare such a construction of this statute.

Even were we disposed to take such a view of the act in question, we would be antagonizing a long line of our own decisions extending back for more than twenty years, in which we have refused steadily and persistently to permit, even where the legislature has distinctly authorized it, properties abutting directly along the line of a street improvement, to be assessed for a second improvement, although they did receive the immediate benefits of such second improvement.   We have repeatedly held such legislation to be in violation of the constitution, and therefore void.   A brief review of these authorities will be instructive, and they will illustrate how we have advanced, rather than receded, from the doctrine first announced in Hammett v. Philadelphia, 65 Pa. 146.

In that case an act of assembly passed March 23, 1866, P. L. 299, authorized and required the city of Philadelphia to occupy Broad street for its entire length, and to pave the street in such manner as the councils should think best, and authorized the city to enact ordinances requiring the cost of the improvement to be paid by the owners of property abutting on the street. The defendant, being an owner of property on the street, refused to pay his assessment, the city sued him for the amount and recovered a judgment in the court below, which was reversed by this court. Mr. Justice SHARSWOOD, delivering the opinion, and conceding the right of the legislature to grant to municipal corporations the power of assessing the cost of local improvements upon the properties benefited, held that where an owner's property had been once assessed for the cost of an improvement, it could not be again assessed for a second improvement, of the same character, and that any law granting such a right to the municipality was unconstitutional and void He said : " There is no case to be found in this state, nor, as I believe after a very thorough research, in any other—with limitations in the constitution, or without them—in which it has been held that the legislature, by virtue merely of its general powers, can levy, or authorize a municipality to levy, a local tax for general purposes. . . . In truth it matters not whether an assessment upon an individual or a class of individuals, for a general and not a mere local purpose, be regarded as an act of confiscation—a judicial sentence or rescript, or a taking of private property for public use without compensation—in any aspect it transcends the power of the legislature, and is void. . . Whenever a local assessment upon an individual is not grounded upon, and measured by, the extent of his particular benefit, it is, pro tanto, a taking of his private property for public use without any provision for compensation. . . . The original paving of a street brings the property bounding upon it into the market as building lots. Before that it is a road, not a street. It is therefore a local improvement, with benefits almost exclusively peculiar to the adjoining properties. Such a case is clearly within the principle of assessing the cost on the lots lying upon it. . . . But when a street is once opened and paved, thus assimilated with the rest of the city and made a part of it, all the particular benefits to the locality derived

from the improvements have been received and enjoyed. . . . Local assessments can only be constitutional when imposed to pay for local improvements, clearly conferring special benefits on the properties assessed, and to the extent of those benefits. They cannot be so imposed when the improvement is either expressed or appears to be for general public benefit."

The fundamental idea of the foregoing decision was that local assessments could only be made for improvements which conferred peculiar local benefits upon property which adjoined the improvement, and even then it could not be made after the property had once before been subjected to such an assessment.

In the case of Washington Avenue, 69 Pa. 352, an attempt was made, under an act of assembly, to impose the cost of grading and macadamizing a street extending several miles into the country from Pittsburgh by a special tax of six dollars per acre on property within half a mile of the street on parts specified; four dollars an acre, etc., within half a mile on other parts; three dollars, etc., within three quarters of a mile on other parts.   Mr. Justice AGNEW in the course of the opinion said: " This case presents a new question upon the power of taxation, the authority of the legislature to compel the owners of farm lands, lying within one mile on each side of a public highway, to pay for grading, macadamizing and improving it, by an assessment upon their lands by the acre. . . . Washington avenue is but seven miles in length, passing through six townships and part of a seventh; but if this mode of taxation, to grade, macadamize and improve it, can be maintained, the legislature, on the same principle, can make a turnpike, a canal, a railroad, or any other highway across the state, and compel the owners of lands, within one or any number of fixed miles, to pay for it, and can assess the cost per acre, not only at six dollars, four dollars, and three dollars per acre, as in this law, but at sixty, forty, thirty, or any number of dollars necessary to build a highway. If this be legitimate taxation it has no bounds. . . . Whether we view this avenue as a macadamized highway, seven miles long or three hundred, the result is the same to those along its route.   To charge its cost upon the farms lying within one mile on each side at a fixed sum per acre is so obviously onerous and unreasonable, and leads to such a destruction of private right, and such unfairness of imposition

for the advantage of the public at large, and of individuals who pay nothing, it cannot on any fair principle of reasoning be said to be a valuation according to benefits. In other words, it cannot, with any degree of truth, be pronounced to be a proper substitute for a just and impartial valuation of benefits."

In a previous part of the opinion Judge AGNEW had reasoned upon the subject of the assessment for benefits, and had reached and expressed the conclusion that where it was made upon the property abutting on the improvement, so that benefits were directly conferred in the way of an enhanced value of the property, it was justifiable. He had said: "So long, therefore, as a law faithfully and reasonably provides for a just assessment according to the benefits conferred, and does not impose unfair and unequal burdens, it cannot be said to exceed the legislative power of taxation, when exercised for proper objects. It is on this ground only that assessment according to the frontage of property on a public street to pay for its opening, grading and paving, is to be justified. As a practical result, in cities and large towns, the per foot front mode of assessment reaches a just and equal apportionment in most cases. Hence this mode has been deemed a reasonable exercise of the taxing power in such places, with a view to taxation according to the benefits received. But it is an admitted substitute, only because practically it arrives, as nearly as human judgment can ordinarily reach, at a reasonable and just apportionment of the benefits on the abutting properties."

These rather extended citations from the opinion in the foregoing case have been made for the purpose of illustrating two propositions: (1) That we refused to permit any assessment upon properties not abutting on the improvement, and (2) that in justifying any assessment for benefits it must be confined to the particular properties which do in fact abut directly upon the line of the improvement.

That is, that no assessment for benefits can be at all justified in a legal sense, except upon those properties which do, in point of fact, adjoin directly upon the improvement, whatever it may be, and especially for grading and paving. And that the moment any other method is adopted so as to take in properties which are not upon the line of the improvement, the taxation by way of assessment for benefits becomes special taxation for

a general purpose, in which all other persons are as much inter-
ested as the person assessed.   The Washington avenue case is
the only one to be found in the reports of our own decisions,
with one apparent exception which will be noticed hereafter, in
which an attempt was made to impose the cost of the improve-
ment upon property not on the line of the improvement.   The
reasoning of the opinion is entirely applicable to the case at bar,
though it can be greatly strengthened by additional considera-
tions which have arisen since that time, 1871, and by numerous
decisions which this court has made since then.   Some of these
will now be noticed.   Let it be premised however that the
whole subject is one of modern origin.   Formerly it was held
by the best lawyers and judges that, as streets and roads are
public highways for the use of all the citizens of the common-
wealth, their improvement was a matter of public concern for
which no one individual could be specially taxed either directly
or by way of assessment.   The older authorities are collected
in the opinion of Justice Sharswood in the Hammett case,
and they go back, in the state of New York, to about the year
1830, and commence in our own state a few years later, when
in 1834 in the case of McMasters v. The Commonwealth, 3
Watts, 292, the constitutionality of an act of our legislature,
passed April 7, 1832, was challenged because it authorized an
assessment for benefits.   But our principal and more impor-
tant·decisions begin with Hammett v. The City, and in those
of more recent occurrence a variety of questions has arisen
which fully test the true character and the limitations of the
doctrine much more fully and precisely than any of the older
cases.   The case called Extension of Hancock Street, 18 Pa.
26, was decided in 1851, and is the one authority relied upon
by the appellee in the present contention in support of the
proposition that the assessment for benefits may be made upon
property not on the line of the improvement.   It is the appar-
ently exceptional case referred to above.   The act in question
was passed on April 6, 1850, P. L. 388.   Under four of its
sections the extension of Hancock street (including Irwin's
alley) was authorized, and the viewers were directed to " ascer-
tain and determine what lots in the vicinity of the said exten-
sion will probably be benefited by the opening of said street,
and to divide and apportion on equitable principles the amount

that each shall separately contribute to defray the damages incurred." It is impossible to tell whether the legislature intended that properties away from the line of the extended street were to be assessed or not, as the words " in the vicinity of said, extension " would certainly apply to all properties along the extension, but it is certain that no exception filed raised the question, whether as to any properties which were not on the line of the extension there was a right of assessment, nor was that subject argued by counsel or discussed in the opinion. There was a question raised as to whether certain lots which had been assessed were in the vicinity of the extension, and the court held that, under so general an expression as that, they would not review the decision of the viewers that the particular lots in question were in the vicinity. The opinion also expresses the idea that the opening of Hancock street would be the extension of Wood street, and therefore the location of lots on Wood street would be in the vicinity, and that it would be the same thing as to say that " Wood street is in the vicinity of Wood street." But the constitutional question, whether the act would be void as to lots located away from the line of the improvement, was neither argued by counsel nor discussed or decided by the court.

Even if the case had decided that lots away from the line of the improvement could be assessed for benefits, it would have to be regarded as practically overruled by the later case, of Washington Avenue, supra, in which that question was met and decided the other way. All of our later decisions are in accord with Washington Avenue.

Thus in the case of Sawmill Run Bridge, 85 Pa. 163, an attempt was made to collect the cost of building a bridge over Sawmill Run within, the city of Pittsburgh, by means of 'assessments for benefits on properties situate on streets in the neighborhood of the bridge. But this court refused to sanction such assessments and reversed the court below for allowing it to be done. Mr. Justice WOODWARD delivering the opinion said : " Can this be called a local improvement, especially benefiting particular individuals and for which they should be compelled to pay? Sawmill Run crosses a public highway of the city. The bridge over it was built in the line of this highway, in which every inhabitant of Pittsburgh may have some inter-

est, and every citizen of Allegheny county and of the commonwealth is entitled to assert some right.   In such an improvement surely no citizen can have exclusively private right and he can scarcely have any definable private interest.   The bridge was constructed to serve an apparent and essential public purpose, and to impose the cost of it on individuals selected out of the mass of the community, on any conceivable rule that viewers could adopt, would be the placing of public burdens on private shoulders. . . . It would seem impossible, in the very nature of the case, that anything like even approximate accuracy or equality could have been attained in such an assessment. . . . Unlike a sewer, and unlike a highway in front of a merchant's store or a tradesman's shop, a peculiar local advantage derived from the bridge would have to be conjectured by the viewers, and the extent of that advantage would be the subject of a second guess.   The uniform rates fixed for all varieties and classes of properties on the line of the same street must have been necessarily unequal, and therefore essentially unjust.   The construction of a street or a sewer improves all the lots along its line in the same way and to the same proportionate extent. The erection of a bridge increases facilities for travel which may materially and immediately improve the business of a broker, a butcher, the proprietor of a hotel, or the keeper of a livery stable, without affecting in any possible way either the business or the property of many classes of mechanics, laborers and men of business.   The difficulties and embarrassments inherently involved in the application to such a subject of the statutory provisions regarding sewers and streets would seem to be insuperable."

The foregoing remarks are strictly applicable to the case at bar.   The property of this appellant is not situate on the line of Barton street, a part of which is the subject of the improvement, but on the line of Forbes street, which runs in an opposite direction, crossing Barton street at right angles.   While the grading, paving and curbing of the part of Barton street between Fifth avenue and Forbes street is, no doubt, a benefit to the properties abutting upon this improvement, and is certainly a public benefit to all travelers passing over the street, it is no special or peculiar benefit to the properties on other streets. The advantage, if any, which they have in consequence of the

improvement is only the same general and public advantage which is enjoyed by all citizens of the commonwealth passing over the improved street. But for that kind of advantage or benefit of course no assessment can be made. Any supposed private advantage, or benefit, to properties on other streets, is necessarily only conjectural and imaginary, and cannot be the subject of an assessment. The owners of such properties have nothing but a right of passage over the improvement precisely the same as all other citizens have. These remarks apply with the same force to all of the other appellants whose properties are on streets other than the one improved.

In the Appeal of the Orphans Asylum of Pittsburgh, 111 Pa. 135, Mr. Justice GORDON said: " We can readily understand why the cost of constructing and maintaining a sewer, which is designed for the drainage of a particular street or locality, and which is essentially necessary for the health, comfort and convenience of the inhabitants dwelling along such street, or in such locality, should be assessed upon the property of the district thus benefited, for the improvement as well as the use is local and the benefit to the public is but secondary. So with a sidewalk without which a house in a town or city cannot be said to be finished, and though the public has the right of way over it the greater benefit results to the property itself. But when we come to a street or other highway, which is primarily designed not for the use or welfare of the inhabitants of any particular locality, but for the public at large, the case is very different. It then becomes utterly unjust to charge the cost of what is purely a public improvement, designed exclusively for the general welfare, upon the property of a few individuals. who, however they may be incidentally benefited, have neither been consulted, nor their profit nor convenience regarded. Under such circumstances we cannot agree to proceed a single step beyond what is warranted by the case of Hammett v. Philadelphia. There is some show of reason why the original cost of grading and paving a street in a populous municipality should be charged upon the adjacent property, for it receives. from the improvement some benefit of a local character, but: when this is done it has fully paid for all its local advantages, and it cannot thereafter be charged for maintenance and repairs."

VOL. CLIX—3

The foregoing case arose under an act passed in 1871 for the purpose of avoiding the effect of the decision in Hammett v. Philadelphia. The act authorized the city councils of Pittsburgh, whenever they desired to repave or regrade a street, and the cost of the original grading and paving was paid by the property holders, to have viewers report whether the improvement is of general or local benefit, and if it was partly or in the whole local, they should designate the district to be benefited and the proportion to be paid by the district benefited. We held that "This involved a principle of taxation that we refused to acknowledge in the cases of" Washington Avenue and the Sawmill Run Bridge, and that "it is utterly vicious and can be sustained by no authority." The improvement in question was a repaving of Tenth street, and, under the act of 1871, if any part of the benefit was local, the cost was to be defrayed by an assessment upon such properties as the viewers might determine to be benefited within a given district benefited, which also was to be prescribed by the viewers. Here is what was said of it in the opinion by Mr. Justice GORDON: "That any part of a municipality should be arbitrarily set apart by a board of viewers and specially taxed for an improvement which, like Tenth street, belongs to the whole of it, is a proposition involving so gross a perversion of constitutional right that it will not bear discussion. The 14th section then provides that this ' local assessment ' shall be apportioned among the property of the district designated, in proportion to the benefits supposed to be conferred by the proposed improvement upon the said property. Here we have another step in the direction of arbitrary and unconstitutional taxation. The viewers, without any fixed rule, but according to their own notions as to what the property owner ought to pay, are to apportion the tax as they may think proper. . . . Now the property dealt with by the act of 1871 is real estate, but the taxation is not uniform within the city of Pittsburgh, the taxing authority, but local and special; some property being burthened with the whole cost of the repairs necessary for this public highway, and the rest wholly exempted."

These remarks are entirely pertinent to the facts of this case. The improvement is a grading and paving of a portion of a public street. The street belongs to the whole city and is a

part of its system of streets established for the convenience and for the use of all the citizens, and of all other citizens of the commonwealth. This, and several of the other appellants, have no private interest in the street itself or in its use. They have only the same public interest in the use that all other citizens have. Their properties do not adjoin or abut upon the improved portion, or upon any other portion, of the street. Upon what principle then can they be called upon to pay a special or local tax for its improvement, except upon the theory which was so emphatically condemned and repudiated in the opinion last quoted. That it was authorized by an act of assembly goes for nothing, because such acts are contrary to the constitution and void, as we there decided. That they are in the neighborhood of the improvement, and are therefore supposed to be benefited, and were so found by the viewers, is of no consequence, since the same consideration was entirely rejected in the cases cited, and upon the soundest principles. It is scarcely necessary to cite further authorities, yet they exist in abundance. In Alcorn v. The City of Philadelphia, 112 Pa. 494, it was said by Mr. Justice TRUNKEY: "It has been settled that 'assessments on property peculiarly benefited by local improvements are constitutional;' that the original paving of a street in a city is a local improvement almost exclusively peculiar to the adjoining properties; that when a street is once open and paved, all the particular benefits to the locality derived from the improvement have been received and enjoyed; and thereafter the repairing of the street must be done by the municipality. . . . The owner shall not be charged for repairing, repaving, or an improvement of the street after it has been duly paved or macadamized, but he is liable in the first instance for the original improvement."

In City of Williamsport v. Beck, 128 Pa. 147, we went one step further and held that the cost of repaving a street could not be charged upon an abutting owner, even where the city had paid for the cost of the original paving, upon the principle that the repair is a public duty for the general benefit. We have since applied the same ruling in several other cases. In Allegheny City v. Railroad Co., 138 Pa. 375, Mr. Chief Justice PAXSON said: " The constitutionality of assessments for street improvements can be sustained only upon the ground that the

property assessed is benefited by the improvement.   This is the doctrine of all the authorities. . . . We are dealing with the question of special local taxation ; of the right of municipal authorities to levy a tax upon A, which it does not impose upon B, for the reason that it has done something by which the property of A has been specially benefited to the amount of the tax. In the absence of any such benefit, in a case where we can declare as a matter of law no such benefit can arise, the legislature is powerless to impose such a burden.   It would not be a tax in any proper sense of the term ; it would be in the nature of a forced loan, and would practically amount to confiscation."

In Pittsburgh's Petition, 138 Pa. 401, our brother WILLIAMS, on p. 434, said : " The assessment of benefits is an exercise of the taxing power.   The tax is defensible on the ground that it rests on an actual benefit conferred on the particular piece or pieces of property on which it is levied.   It is a local tax resting on a local benefit. . . . An assessment levied in order to cover all the cost of a given improvement, without regard to the actual benefits conferred by it, is simply confiscation. . . . The benefits to be assessed are simply such as are peculiar to the property assessed.   A mere general increase in the value of property in that part of the city is not enough.   It must relate to the increase that is peculiar to the property liable to assessment, and is due simply to the improvement proposed."

All of the foregoing considerations have controlling force in this case.   If there is any advance in the general value of property, a fact which is neither found nor proved, that is a benefit which is common to all the neighboring property, and is not peculiar to any one piece, and that kind of benefit cannot be assessed.   But a very slight process of reasoning will demonstrate the very great injustice and oppression of this species of taxation.   The exceptions allege that the property of the appellant has already been assessed for the grading and paving done in front of the appellant's property, and if another assessment for grading and paving in front of some other person's property, either on the same or some other street, is allowed, it will be in contravention of the whole current of decisions from Hammett's case to the present time.   Even the abutting owner cannot be assessed twice where the improvement is directly in front of his property.   How then can he be assessed twice when the improvement is not in front of his property ?   What

a mockery of justice it would be to load up an owner with one assessment after another, because the improvement is in front of some other person's property somewhere in the neighborhood, on the same street, on several other streets, on all the streets which may be in fact or which a jury of viewers may say are, in the neighborhood. If this thing may be done once more than upon the original occasion, it may be done any number of times more. To-day the improvement is upon a part of one street " in the neighborhood," to-morrow it may be upon another part of the same street, or it may be upon another street which is also " in the neighborhood." How long will a citizen's property continue to be his if it may be appropriated time and again in this ruthless and despotic manner? The writer is most earnestly impressed with the conviction that such a doctrine cannot be tolerated for a single moment, that it would be destructive of all values of municipal property, that it is utterly subversive of every element of fairness, or justice, or common right, that it has never been sustained by a solitary decision of this or any other court of last resort, that it is in violation of the fundamental principle that taxation must " be uniform upon the same class of subjects within the territorial limits of the authority levying the tax," that it means the appropriation of the private property of a few individuals to discharge a public burthen, and that it is in fatal hostility with a long line of our own decisions, which declare in the most emphatic language that the private property of citizens shall not be subjected more than once to assessment for benefits for a street improvement, even when the improvement is immediately in front of the property.

As we have repeatedly decided, the doctrine of assessment for benefits, to pay for public improvements, can only be defended upon the ground that the benefits are local and essentially peculiar to the very property assessed, and then it can only be done once. This can only be the case when the property assessed abuts directly upon the line of the improvement. Having their own burthens to bear in this respect, the owners cannot be subjected to the discharge of similar burthens upon other properties, whether situate on the same street or in the same neighborhood. Said AGNEW, J., in the Washington Avenue case, speaking of the Hammett case: " The majority opinion in that case did not then, and this opinion does not now, dispute the long-recognized power of local taxation for local

improvements according to the benefits conferred; but they meet and dispute departures from that power, which, if recognized, will land in the overthrow of the right of private property. Laws which cast the burthens of the public on a few individuals, no matter what the pretence or how seeming their analogy to constitutional enactments, are in their essence despotic and tyrannical, and it becomes the judiciary to stand firmly by the fundamental law in defence of those general great and essential principles of liberty and free government, for the establishment and perpetuation of which the constitution itself was ordained."

The report of the viewers is obnoxious to the decisions of this court in the cases of Travers' Appeal, 152 Pa. 129, and Wilson's Appeal, 152 Pa. 136. The defect in this report is precisely the same as in those, and it is apparent on the face of the report. While it is true that specific exceptions on this very ground do not appear to have been filed before the viewers, yet the first assignment of error raises the question of the validity of the decree, and as any defect which appears on the record, and is fatal in its character, will sustain such an assignment, we think the question is sufficiently before us.

The decree of the court below is reversed, and the petition of the city and all proceedings thereunder are dismissed and set aside at the cost of the city.

Mr. Justice Mitchell, concurring:

I concur in this judgment on the construction of the act of May 16, 1891, but as the constitutional question upon the power of the legislature does not necessarily arise, I prefer not to advance any opinion upon it.

### APPEAL OF E. M. FERGUSON ET AL.

Opinion by Mr. Justice Green, October 30, 1893:

These appellants were owners of property on Barton street, but not along the line of the improvement between Fifth avenue and Forbes street. The reasons stated in the opinion in the appeal of Mrs. Alexander Chambers are as applicable in these cases as in that, and therefore

The decree of the court below is reversed, and the petition of the city and all proceedings thereunder are dismissed and set aside at the cost of the city.