## Grafius' Run.

*Road law—Land damages—Abutting property—Act of April 28, 1899, P. L. 74—Waters.*

The Act of April 28, 1899, P. L. 74, entitled "An Act authorizing any borough or city within this Commonwealth to vacate, change, alter, or relocate the course or channel of any creek, run, or natural waterway, other than navigable streams, and for this purpose to enter upon, condemn, and take property and materials to such vacation, change, alteration, or relocation, and providing for the ascertainment and assessment of costs, damages, and expenses, as well as the levy and collection of benefits arising therefrom, and constituting such benefits a lien upon the properties upon which they are respectively assessed," does not confer on a city power to levy any special taxes against or assess with benefits any property not abutting on the line of the public improvement.

Argued March 8, 1906.   Appeal, No. 9, March T., 1906, by the heirs of the Estate of Sarah T. Smith, deceased, from order of C. P. Lycoming Co., March T., 1901, No. 332, assessing damages from appeal of award of jury of view in the Matter of Grafius' Run.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.   Reversed.

Appeal from award of jury of view.   Before HART, P. J.

From the record it appeared that in 1901 the city of Williamsport by ordinance changed the location of Grafius' Run. Viewers were appointed to assess benefits and damages under the act of April 28, 1899.   The jury assessed benefits against a large number of property owners.

Exceptions to the report of the jury of view were overruled by the court.

*Errors assigned* were in overruling exceptions to report of jury of view.

*H. W. Pyles* and *H. T. Ames*, of *Ames & Hammond*, for appellant.—The power of assessing costs of local improvements upon the property benefited is a species of taxation: Hammett v. Philadelphia, 65 Pa. 146; Pittsburg v. Sterrett Sub-District School, 204 Pa. 635; Philadelphia v. Pemberton, 208 Pa. 214.

Local assessments for local improvements can be imposed only to the extent of benefits: Philadelphia v. Pemberton, 208 Pa. 214; Hammett v. Philadelphia, 65 Pa. 146; Washington Avenue, 69 Pa. 352.

The authority to impose a special assessment for benefits resulting from local improvements, which is an exercise of the taxing power, is conferred by statute and the provisions of the statute must be strictly complied with: Harriott Avenue, 24 Pa. Superior Ct. 597; Franklin v. Hancock, 18 Pa. Superior Ct. 398; Scranton v. Koehler, 200 Pa. 126.

The authorities establish the general rule, based upon the consideration of the nature of local assessments for public improvement, that the legislature has not power to authorize a municipal assessment therefor upon non-abutting property for paving, sewering or other improvements of the same kind: Morewood Avenue, 159 Pa. 20; Orkney Street, 9 Pa. Superior Ct. 604; Witman v. Reading, 169 Pa. 375; Park Avenue Sewers, 169 Pa. 433; Fifty-fourth Street, 165 Pa. 8; Beechwood Avenue Sewer, 179 Pa. 490; Colwyn Borough v. Tarbottom, 9 Pa. Superior Ct. 414; Thirteenth Street, 16 Pa. Superior Ct. 127; Grant Street, 17 Pa. Superior Ct. 459; Washington Avenue, 68 Pa. 352; Saw-Mill Run Bridge, 85 Pa. 163; Orphan Asylum's App., 111 Pa. 135; Alcorn v. Philadelphia,

112 Pa. 494; City of Williamsport v. Beck, 128 Pa. 147; Allegheny City v. Railroad Co., 138 Pa. 375; Pittsburg's Petition, 138 Pa. 401.

The Act of April 28, 1899, P. L. 74, does not authorize a municipality to assess non-abutting property owners for the construction of a storm water sewer or for the vacation of a water course.

*Frank P. Cummings*, city solicitor, for appellee, cited: McMasters v. Commonwealth, 3 Watts, 292; Fenelon's Petition, 7 Pa. 173; Extension of Hancock Street, 18 Pa. 26; Pennock v. Hoover, 5 Rawle, 291; The Northern Liberties v. St. John's Church, 13 Pa. 104; Phila. v. Wistar, 35 Pa. 427; Commonwealth v. Woods, 44 Pa. 113; Magee v. Commonwealth, 46 Pa. 358; Wray v. The Mayor, etc., of Pittsburg, 46 Pa. 365; Washington Avenue, 69 Pa. 352; Orphan Asylum's Appeal, 111 Pa. 135; In Re Vacation of Center Street, 115 Pa. 247.

OPINION BY HEAD, J., October 5, 1906:

To view, in the light most favorable to the appellee, the Act of April 28, 1899, P. L. 74, under which the present proceeding was instituted, we would classify it with a long series of acts, passed since the adoption of the new constitution, in which the legislature has authorized the construction, by municipalities, of various local improvements such as streets and sewers, and the collection of the whole or part of the cost thereof from certain properties found to have been peculiarly and specially benefited thereby. So much litigation has arisen under these various acts resulting in the judicial construction of almost every one of them, that we must now regard as firmly imbedded in the body of our law those principles stated and reiterated in this long line of decisions. It is settled that the imposition on certain properties in a town or city, of the burden of paying all or part of the costs and expenses of an improvement, when other properties in the vicinity or in the municipality generally are not called upon to share in such burden, is an exercise of the taxing power. At the outstart all acts of this class were strongly attacked on the ground that they were in violation of that provision of the constitution which requires that all taxation must "be uniform upon the

same class of subjects within the territorial limits of the authority levying the tax." But the courts steadily held to the propositions that such taxation, within the limits hereinafter stated, was not violative of the fundamental law and could be sustained, but on the basis only "that the benefits are local and essentially peculiar to the very property assessed;" and "the limit of the benefit is the limit of the taxing power:" Park Avenue Sewers, 169 Pa. 433; Morewood Avenue, 159 Pa. 20.

Had the courts, however, in the construction of these legislative acts, gone no farther than to announce the two principles already referred to, but little would have been accomplished of practical importance to protect the property of the citizen from unjust and unconstitutional taxation. The municipality, a city engineer, a board of viewers or other body provided by the legislature would still be at liberty to range at will over sections of the community more or less remote from the location of the improvement, and, on the theory that they lay in the same watershed, or within the lines to which the swollen waters of some stream in times of great floods had risen, or for other like reason, determine that they were specially benefited by the construction of the improvement and should be saddled with the cost of it. Thus could the citizen be so loaded with benefits that his property would be taken from him in discharge of burdens which should be borne by all, and the provisions of the constitution directing uniformity of taxation and forbidding the taking of private property for public use without making just compensation therefor, be rendered wholly ineffectual.

When a street is opened or paved or a sewer constructed in a city or borough, the improvement comes into actual contact with the properties that abut on the line of it. By its construction these properties are physically and palpably changed and affected. This physical, tangible change in their condition may result in making them worse or better, may damage or benefit them. But such damages are actual and real, such benefits are special and peculiar. And surely, in sustaining what is admittedly a species of special taxation and therefore an apparent exception to the broad constitutional provision on the subject, the courts must have intended that the properties sub-

ject to such taxation could be segregated from the others in the same community by some plain and well-defined line. It is doubtless true that other properties beyond this line of physical contact may receive some benefit from the construction of an improvement; otherwise it would be difficult to justify the making of any such improvement at the expense of all the people of a community. The line by which properties, subject to assessment for such benefits as those last referred to, would be separated from their adjoiners not called upon to bear any burden, would be wholly arbitrary, depending on nothing more fixed and certain than the guess or notion of the officer or board making the assessment. In the improvement of one street or section of a city the line of demarcation might be fixed by one board of viewers on one plan or theory, in the next street or section another board might adopt a totally different plan, and thus, by reason of this uncertainty, property values would be greatly disturbed and the condition of the citizen rendered intolerable.

Our courts, however, in upholding legislation authorizing the levying of special taxes, under the guise of assessments for benefits, to pay the cost of improvements, have repeatedly declared that such assessments must be confined to properties abutting on the line of the improvement. Many ably contested and well-considered cases have held that this line could neither be overstepped nor departed from. In Morewood Avenue, 159 Pa. 20, where Mr. Justice GREEN fully reviews the entire line of cases on the subject, it is said : " As we have repeatedly decided, the doctrine of assessment for benefits, to pay for public improvements, can only be defended upon the ground that the benefits are local and essentially peculiar to the very property assessed, and then it can only be done once. This can only be the case when the property assessed abuts directly upon the line of the improvement. Having their own burthens to bear in this respect, the owners cannot be subjected to the discharge of similar burthens upon other properties, whether situate on the same street or in the same neighborhood." In Park Avenue Sewers, 169 Pa. 433, Mr. Justice MITCHELL, speaking for the court, says : " But viewing the subject on the broader ground of the nature of local assessments, it is settled beyond all question by a line of cases of which it is only necessary to mention Ham-

mett v. Philadelphia, 65 Pa. 146, and Washington Avenue, 69 Pa. 352, that they are special and individual taxation, sustainable only on the basis of special and individual benefit, and the limit of the benefit is the limit of the taxing power. It was accordingly held in Morewood Avenue, 159 Pa. 20, and repeated in Fifty-fourth Street, 165 Pa. 8, that assessments for local improvement by paving must be confined to property abutting on the street so improved. It is not easy to see any valid distinction in this respect between improvement by a pavement and improvement by a sewer, and there are very strong reasons why no such distinction should be recognized." In Harriott Avenue, 24 Pa. Superior Ct. 597, this court, W. D. PORTER, J., defining the limits of such assessments under the act of May 16, 1891, said : " This broad interpretation of the term ' properties peculiarly benefited by the improvement,' as embracing all property without regard to its nature and location, cannot be sustained. The property liable to assessment under the provisions of this statute is such only as abuts directly upon the line of the improvement." In Orkney Street, 9 Pa. Superior Ct. 604, this court was called upon to construe the act of April 1, 1864, which enacted that when a street was opened in the city of Philadelphia the " jury appointed to assess the damages . . . . shall also make inquiry as to the advantages of opening said street to property in the immediate vicinity of the same." This is certainly broader language than can be found in either the acts of 1891 or 1899. In holding that even under this act there could be no assessment of non-abutting property, this court, RICE, P. J., declared: " It is vain to argue that Morewood avenue can only be regarded as a binding authority where the proceedings are under the act of 1891. It not only construes that act, but it also lays down a general rule, based upon a consideration of the nature of local assessments for public improvements and of the limitations of the power of the legislature in that regard, which, although the act were as broad in terms as the Act of April 1, 1864, P. L. 206, would defeat any assessment of non-abutting property for paving or sewering, or other improvement of the same kind." These cases, and many more that could be cited, seem to me to oblige us to hold that the legislature could not, acting within its constitutional powers, authorize the appellee to assess benefits against, or in other words, levy special taxes on, any prop-

erties, to pay the cost of a local improvement, except those abutting directly on the line of such improvement. And why should it be assumed that the legislature intended, by the act of 1899, to pass the line previously marked by the courts? The language of the act, conferring on the appellee the power to levy special taxes and describing the properties on which they might be levied, is not substantially different from, indeed is almost identical with, that used in the act of 1891, construed in several of the cases cited. The language of the latter act having been interpreted by the court to authorize no assessments except against abutting properties, it must be assumed that when the legislature again used substantially the same form of expression in the act of 1899, it intended to confer but the same power and no greater than was held to have been conferred by the earlier act: Endlich on Int. Stat., secs. 367–369. Waiving, then, any question of the constitutional power of the legislature to authorize the levy of a special tax on property not abutting on the line of the improvement, and looking at the act of 1899 to see what power was actually granted, keeping in mind the well-established rule of interpretation just referred to, we can find no intrinsic evidence that any other or larger powers were intended to be conferred than were given in substantially the same language by the earlier act. The authoritative construction of that language in the act of 1891 must control its interpretation in the act of 1899.

But it is ingeniously argued by the learned counsel for the appellee that the "improvement" in the present case is "the removal of the floods and waters from the properties within the affected area," and as a consequence that every property in that section may be said to abut on the line of the improvement within the reason and meaning of the decisions cited. This seems to be a substitution of the effect for the cause, of the results following or expected to follow the completion of the improvement for the improvement itself. The word "improvement," as used in the act of 1899 and the earlier acts with which it may be properly classed, we understand to mean the work done on the ground which involved the expenditure of money, to recoup which, in whole or in part, the authority to levy special taxes on properties specially benefited is conferred on the municipality. The improvement in the present case is

clearly and conclusively defined in the following paragraph taken from the report of the viewers :

" That the estimated cost of construction of the main sewer down Locust street, from High street to the river, is about $95,000, of which sum the undersigned viewers have assessed against the properties which, in their judgment, are or will be affected by the proposed improvement, the sum of $25,398." Strong reasons, indeed, might be urged for holding that, in a proceeding like the present, under the act of 1899, the line of improvement would embrace not only the line of the newly constructed channel of the stream, whether on or beneath the surface, but also the line of the old and vacated channel, because the properties abutting on the latter would be physically changed and affected by the accretion to each of its proportionate share of the abandoned water way. But as the properties of the appellants here are remote from both the old and new channels, we are not required to consider that question.

The special benefits which it is alleged have accrued to the properties of the appellants, remote from the line of the improvement, are thus described in the report: " That the waters of Grafius's Run have within two years past overflowed its banks and flooded the following described territory : " (Here follows a description of a large section of the city, including the properties of appellants) " . . . . that if the plan of sewerage or drainage adopted by said ordinance No. 753 (an ordinance earlier in date than the one under which the present improvement was begun and which provided apparently a comprehensive plan for the sewerage of the city) is fully carried out, the waters of Grafius's Run will be effectually disposed of and removed from the territory first described," etc. How frequently and upon what kind of occasions the waters of the Run reached the properties of the appellants, whether on every ordinary rise and freshet in the stream, whether on the occasions of extraordinary floods only, or whether indeed the visitations were confined to those rare but awful elemental disturbances we call acts of God, the report does not inform us. Thus the supposed benefits, which consisted in the probable removal of danger from such floods, would become more and more remote, speculative and uncertain as the danger of the recurrence

of the floods, according as they may have belonged to the one class or the other, would diminish.

Looking at the case in every aspect, at the character of the improvement, the area supposed to be affected and benefited thereby and at the nature of the benefits claimed to have accrued to non-abutting properties, we are unable to discover any difference in principle between it and Beechwood Avenue Sewer Cases, 179 Pa. 490. In that case the Supreme Court reaffirmed the doctrine of the entire line of cases herein so often referred to. The same reasoning that led the court in that case to confine assessments for benefits to abutting properties, must logically lead us to the same conclusion here. As the properties of the appellants did not abut on the line of the improvement, their assessment cannot be sustained.

We hold, therefore, that the act of April 28, 1899, under which this proceeding was begun, did not confer on the city of Williamsport the power or authority to levy any special taxes against or assess with benefits any property not abutting on the line of the improvement which was constructed. Even if the intention to confer such power could be found in the act when construed in the light of the decisions of the Supreme Court and this court, I would hold that the legislature had exceeded its constitutional powers, because such legislation would result in the practical nullification of the provisions of the constitution hereinbefore referred to. But as my brethren are not all of one mind on this question and do not regard its determination as necessary in disposing of the case before us, we rest our judgment on the other ground. The second and third assignments of error are sustained.

Judgment reversed.